UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21 CR 297 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| ANTWAN EILAND, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

On December 8, 2022, a jury convicted defendant Antwan Eiland on two counts of distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1). On July 5, 2023, the Court heard brief oral argument on Eiland's motions for judgment of acquittal pursuant [94] and for a new trial [95] pursuant to Federal Rules of Criminal Procedure 29 and 33, respectively. For the following reasons, the Court denies Eiland's request for an evidentiary hearing and denies both motions.

**Background**

At trial, the government called four witnesses to provide evidence in support of the charges. First, the ATF's paid confidential informant Luis Villegas testified that he met Eiland at the Maywood courthouse on February 15, 2017. Villegas testified that he was at the courthouse to resolve a traffic ticket that he had been issued on February 13, 2017. While at the courthouse, Villegas testified that he connected with Eiland after overhearing Eiland have a conversation with another individual about crack cocaine. On two occasions thereafter, Villegas (at the direction of the ATF) purchased crack cocaine from Eiland. Defense counsel cross-examined Villegas at length on the circumstances of his introduction to Eiland. In particular, Villegas testified that he first called Eiland after his 9:00 a.m. court hearing on February 15, but his phone records show that he called the number associated with Eiland at 8:59 a.m. that morning. Further, the government could not

produce records showing that Villegas had a February 15 court hearing, though the parties stipulated that law enforcement issued Villegas a traffic ticket on February 13, 2017.

The jury also heard from Theresa Robinson, a friend of Eiland's aunt. At trial, Robinson testified that she knew Eiland by the nickname "Black." She told the jury that in February 2017, she drove Eiland to a parking lot where someone she did not know entered the vehicle and purchased crack cocaine from Eiland. On cross-examination, defense counsel elicited testimony that Robinson first talked to the government about the 2017 events a few months before the trial in 2022. When agents initially asked if she knew someone by the nickname of "Black," she gave another name but did not mention Eiland. In addition, she did not immediately identify a picture of Eiland when prompted. Robinson only recognized Eiland after agents presented her with a subpoena bearing Eiland's name.

Finally, ATF Special Agent Michael Ramos testified that he worked with Villegas to coordinate the purchase of crack cocaine from Eiland. Ramos ran the phone number Villegas used to communicate with Eiland through a law enforcement database, which showed the number was linked to Eiland. Ramos also sent Villegas the photograph associated with Eiland's driver's license, which Villegas identified as the individual he met at the Maywood courthouse. Ramos testified that he did not save a copy of the driver's license printout. He also did not obtain any written records about any independent description Villegas gave of Eiland.

On December 8, 2022, the jury found Eiland guilty on two counts of distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1). After the jury was discharged, the Court permitted counsel to speak with the jurors. Government counsel elected to meet with the jurors; defense counsel elected not to stay. One juror ("Juror A") told government counsel that he thought Eiland might have worn a mask to hide his face from jurors so they could not compare his face to the video footage used at trial, and that it was possible Eiland did not testify so the jurors could not compare

his voice to the audio recordings presented at trial. The government disclosed the comments to defense counsel.

**Discussion**

*Motion for Judgment of Acquittal*

Defendants seeking a judgment of acquittal bear "a heavy, indeed nearly insurmountable burden" in sustaining this motion. *United States v. Warren*, 593 F.3d 540, 546 (7th Cir. 2010). This is because when assessing Rule 29 motions, "courts view the evidence in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt." *United States v. Wallace*, 991 F.3d 810, 812 (7th Cir. 2021). Merely attacking a witness's credibility is insufficient to prevail—Courts "do not reassess the weight of evidence or second-guess the trier of fact's credibility determination." *United States v. Arthur*, 582 F.3d 713, 717 (7th Cir. 2009); *see also United States v. Ginsberg*, 971 F.3d 689, 695 (7th Cir. 2020).

Eiland argues that the evidence presented at trial did not lay a sufficient basis on which a jury could find him guilty beyond a reasonable doubt. But Eiland's arguments primarily attack the government witnesses' credibility, which alone is insufficient to warrant a judgement of acquittal. *See United States v. Jones*, 56 F.4th 455, 488 (7th Cir. 2022) (quoting *United States v. Conley*, 875 F.3d 391, 400 (7th Cir. 2017)) ("Finding a witness incredible as a matter of law is typically reserved for 'extreme situations' where, for example, it was 'physically impossible for the witness to observe what he described' or 'impossible under the laws of nature for those events to have occurred at all.'").

For example, Eiland contends that Villegas gave contradictory and unsupported testimony about how he met Eiland at the Maywood courthouse on February 15, 2017. Eiland points to the government's lack of records confirming that Villegas appeared at the courthouse on that date. But the parties' stipulation that Villegas was issued a traffic ticket two days before the alleged court

3

appearance reasonably allowed jurors to conclude that Villegas testified credibly. Eiland also suggests that Villegas made other minor inconsistent statements about the precise time he called Black on February 15, 2017, or exactly what he overheard Eiland saying at the courthouse. Neither issue was material to the government's case and these alleged contradictions do not make it "impossible under the laws of nature for [the] events to have occurred at all." *Conley*, 875 F.3d at 400. Furthermore, defense counsel crossed Villegas extensively on these issues and argued that Villegas was not a credible witness in closing. The jury thus possessed Eiland's arguments about Villegas' credibility during its deliberations. "When a jury has chosen to credit crucial testimony with full knowledge of the many faults of the witness providing it, we have no basis to interfere, as the jury is the final arbiter on such questions." *United States v. Alcantar*, 83 F.3d 185, 189 (7th Cir. 1996) (citations omitted). Therefore, the Court will not second-guess the jury's assessment of Villegas' testimony. *See Arthur*, 582 F.3d at 717.

Robinson's alleged credibility issues likewise do not demand the Court enter a not guilty judgment. Eiland maintains that Robinson's trial testimony and her identification of Eiland was patently unbelievable. However, as with Villegas' testimony, defense counsel thoroughly explored the credibility of Robinson's identification of Eiland as "Black" during cross examination. *See Alcantar*, 83 F.3d at 189. The government also presented evidence that once Robinson saw Eiland's name, she identified him and remembered additional details about the interaction, including that she met Eiland through his aunt. Therefore, this is not the kind of "extreme situation" in which the Court must find a witness's testimony incredible as a matter of law. *Conley*, 875 F.3d at 400. The Court reaches the same conclusion regarding Special Agent Ramos' testimony. The agent's failure to keep certain documents did not render his testimony so inherently unbelievable or unreliable that the Court must now overturn the jury's verdict. For these reasons, Eiland's motion for judgment of acquittal is denied.

*New Trial Motion*

Rule 33 authorizes district courts to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. Granting a new trial is "reserved for only the most extreme cases," and courts "approach such motions with great caution." *United States v. Coscia*, 4 F.4th 454, 465 (7th Cir. 2021) (quotation marks and citations omitted). "A new trial is warranted 'where the evidence preponderates so heavily against the defendant that it would be a manifest injustice to let the guilty verdict stand." *Conley*, 875 F.3d at 399 (citing *United States v. Reed*, 875 F.2d 107, 114 (7th Cir. 1989)). The Court cannot make this decision based upon inadmissible testimony. *Wiedemann v. Galiano*, 722 F.2d 335, 337 (7th Cir. 1983). District courts have considerable discretion when ruling on Rule 33 motions. *United States v. Friedman*, 971 F.3d 700, 716 (7th Cir. 2020).

Eiland moves for a new trial based on Juror A's post-trial comments. He argues that the comments attribute a "cynical motive" to Eiland regarding Eiland's decision not to testify on his own behalf. The government responds that the Court may not consider the juror's post-trial statements because they are inadmissible under Federal Rule of Evidence 606. According to Rule 606(b)(1), "a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." The rule contains exceptions, allowing the admission of evidence showing that "extraneous prejudicial information was improperly brought to the jury's attention; an outside influence was improperly brought to bear on any juror; or a mistake was made in entering the verdict on the verdict form." Fed. R. Evid. 606(b)(2). In sum, Rule 606 prohibits evidence of *internal* jury matters or processes but allows evidence of improper *external* forces on the jury's decision. *See United States v. Torres-Chavez*, 744 F.3d 988, 997 (7th Cir. 2014) (comparing external and internal influences on the jury).

Juror A's comments are inadmissible under Rule 606 because they only show evidence of internal jury deliberations. This case is strikingly similar to *United States v. Torres-Chavez*, 744 F.3d 988 (7th Cir. 2014). There, the Seventh Circuit concluded that three jurors' post-trial statements about the defendant's right to remain silent "concern[ed] only intrajury influences on the verdict during the deliberative process and therefore f[e]ll squarely within the Rule 606(b)(1) prohibition." *Id.* at 998 (cleaned up). The appellate court upheld the district court's exclusion of the statements as they were "not admissible under existing law." *Id.* Eiland attempts to distinguish his case from *Torres-Chavez* in reply by arguing that Juror A's statements could have been based on racial or ethnic bias. In doing so, he seeks to invoke *United States v. Villar*, 586 F.3d 76 (1st Cir. 2009), a First Circuit case that held that district courts may inquire into juror's statements of racial or ethnic bias during jury deliberations. Defense counsel argued at oral argument that Juror A was clearly biased and that the Court must permit questioning of Juror A to *rule out* that his bias was based on race.

The Court rejects Eiland's argument. Nothing about Juror A's statements indicate racial or ethnic bias. Eiland presents no other evidence suggesting that the jury improperly considered race in its deliberations. The fact that Eiland raises the issue of potential racial or ethnic bias for the first time in reply (after the government presented arguments based on *Torres-Chavez*) only strengthens the Court's conclusion that no such evidence exists. Therefore, the Court denies Eiland's request for an evidentiary hearing—the Court will not open the door for questioning of jurors in cases without proper justification. Because Eiland fails to otherwise distinguish this case from *Torres-Chavez*, the Court follows the direction of the Seventh Circuit and holds that the Juror A's statements fall under the Rule 606(b)(1) prohibition. Eiland's motion for a new trial is denied.

**Conclusion**

For these reasons, the Court denies defendant's motion for judgment of acquittal [94] and motion for a new trial [95].

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Court Judge

DATED: 7/21/2023